Mohamud ABUKAR, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee

NO. 2012-CA-001527-MR

Court of Appeals of Kentucky.

JULY 21, 2017

BRIEFS FOR APPELLANT: D. Alexandria Lubans-Otto, Florence, Kentucky.

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, David B. Abner, Assistant Attorney General, Frankfort, Kentucky.

BEFORE: COMBS, D. LAMBERT AND THOMPSON, JUDGES.

## OPINION

THOMPSON, JUDGE:

The sole issue presented to this Court is whether the Kenton Circuit Court properly rejected Mohamud Abukar's challenge pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We conclude that the trial court properly denied Abukar's race-based and religion-based challenge to the prosecutor's peremptory strike of a juror.

Mohamud Abukar, a United States citizen and native of Somalia, was arrested and tried by a jury for the rape of an intoxicated female while she was passed out in a taxi operated by Abukar. After voir dire, the Commonwealth exercised a peremptory challenge to strike a female juror, Jamel Haque, who like Abukar, was a person of color and Muslim. Abukar raised a *Batson* challenge stating the juror was struck because of her race and religion.

The trial court then asked the Commonwealth its reason for striking Haque to which it responded as follows:

> Your honor, we do have a reason. Along with Linda Moore and Julia Price who were Caucasian, based on their faiths, they were non-drinkers. Miss Haque was a non-drinker. The only non-drinker we kept didn't drink because he was allergic but his kids drank. That was the reason why and that came up in my voir dire where she answered it.

The trial court denied Abukar's *Batson* challenge finding that the Commonwealth's reason for striking Haque was not based on race or religious affiliation but on her attitude regarding the consumption of alcohol. The trial court ruled as follows:

> This case involves a rape alleged to have occurred to an individual who was so intoxicated that she passed out for hours on end. Attitudes toward alcohol and drug consumption is relevant to the proceeding. The Commonwealth voiced a race-neutral reason for the strike and struck all jurors who gave the same answer who were not Muslim or of color except the potential juror whose reason for not drinking was not philosophical or moral but who had a physical allergy. The Commonwealth articulated a sufficient basis.

Abukar was convicted of first-degree rape and sentenced to twelve-years' imprisonment. He appealed to this Court presenting three arguments: (1) the failure of the trial court to provide him a Somali interpreter for his trial violated KRS 30A.410; (2) the trial court erroneously denied his motion to suppress evidence obtained when he was detained without probable cause; and (3) the trial court erroneously denied his *Batson* challenge after the Commonwealth struck Haque. This Court rejected Abukar's claim on the denial of his suppression motion but reversed

on the issue of his entitlement to an interpreter. Because this Court reversed Abukar's convictions and remanded for a new trial, Abukar's *Batson* issue was not addressed.

The Commonwealth's motion for discretionary review in the Kentucky Supreme Court was granted. Abukar did not request further review of the suppression issue so this Court's resolution of that issue stood unchallenged. *Commonwealth v. Abukar,* 497 S.W.3d 231 (Ky. 2016). The Supreme Court reversed this Court with respect to the issue of the interpreter and remanded the case to this Court to consider Abukar's *Batson* issue. *Id.* at 232.

■ The holding of *Batson* is by now well-known. "[T]he Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable [to] impartially consider the State's case against a black defendant." *Batson,* 476 U.S. at 89, 106 S.Ct. at 1719. To the extent Abukar challenges the Commonwealth's strike based on race, *Batson* clearly applies.

■ *Batson* set forth a three-step framework to be used when a defendant objects to the prosecution's exercise of a peremptory challenge based on *Batson.*

> First, the defendant must show a prima facie case of racial discrimination. If the trial court is satisfied with the defendant's showing, the burden shifts to the prosecutor to state race-neutral reasons for the peremptory strikes. The trial court must then determine whether the defendant has sufficiently proven purposeful discrimination.

*Thomas v. Commonwealth,* 153 S.W.3d 772, 777 (Ky. 2004). A trial court's denial of a *Batson* challenge is reviewed for clear error. *Washington v. Commonwealth,* 34 S.W.3d 376, 380 (Ky. 2000).

Because the Commonwealth responded to Abukar's *Batson* challenge, whether he made a *prima facie* case of racial discrimination is moot. *Commonwealth v. Coker*, 241 S.W.3d 305, 307 (Ky. 2007). Therefore, our inquiry turns to the second part of the *Batson* framework, which required the Commonwealth to demonstrate a race-neutral reason for exercising its peremptory challenge. "At this step, all that is required is that a prosecutor's articulated reason for exercising a peremptory challenge be race-neutral on its face." *Id.* As the United States Supreme Court has explained, "[t]he second step of this [*Batson*] process does not demand an explanation that is persuasive, or even plausible." *Purkett v. Elem*, 514 U.S. 765, 767-68, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834 (1995).

The Commonwealth's reason for striking Haque was its belief that those jurors who did not drink alcohol would be inclined to blame or not believe the victim in the case who was so intoxicated that she passed out in Abukar's taxi. As the Commonwealth stated, it struck all the jurors who stated they did not drink alcohol except for one who responded he did not drink alcohol because he was allergic, but added that his children drank. The Commonwealth gave a race-neutral reason for the peremptory strike.

The final step of the *Batson* framework required that the trial court determine if Abukar met his burden of proving purposeful discrimination. In *Washington*, 34 S.W.3d at 379 (quoting *Wright v. State*, 586 So.2d 1024, 1028 (Fla. 1991)), the Court explained the duty of the trial judge:

> [A] judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact. In order to permit the questioned challenge, the

trial judge must conclude that the proffered reasons are, first, neutral and reasonable, and second, not a pretext. These two requirements are necessary to demonstrate "clear and reasonably specific ... legitimate reasons."

The trial court's "decision on this point requires it to assess the credibility and demeanor of the attorneys before it[.]" *Coker*, 241 S.W.3d at 308. The "evaluation of the prosecutor's state of mind, as well as the proffered reasons for the peremptory challenge, lies 'peculiarly within a trial judge's province.' " *Washington*, 34 S.W.3d at 379 (quoting *Commonwealth v. Snodgrass*, 831 S.W.2d 176, 179 (Ky. 1992)). "[T]he trial court's ultimate decision on a *Batson* challenge is like a finding of fact that must be given great deference by an appellate court." *Coker*, 241 S.W.3d at 308.

The evidence in this case was that the victim had been at a nightclub and entered Abukar's taxi in such a highly intoxicated state that she passed out. A potential juror's attitude regarding drinking alcohol and those that are intoxicated could sway a juror from a vote of guilt to innocence. As indicated by the trial court, the prosecutor's explanation for striking Haque and other non-drinkers from the jury was more than plausible in light of the evidence. The trial court did not commit clear error when it found that the Commonwealth's race-neutral reason was not a pretext for racial discrimination. *Washington*, 34 S.W.3d at 380.

In addition to a race-based *Batson* challenge, Abukar also made a religion-based *Batson* challenge. Although *Batson* has been extended to gender-based peremptory challenges, *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), "whether *Batson*'s reasoning extends to religion remains unclear." *United States v. Mahbub*, 818 F.3d 213, 225 (6th Cir. 2016). What is clear is

that a strike based on a prospective juror's belief or attitude rather than religious affiliation does not implicate *Batson*.

As stated in *United States v. DeJesus*, 347 F.3d 500, 510 (3d Cir. 2003), "[e]ven assuming that the exercise of a peremptory strike on the basis of religious affiliation is unconstitutional, the exercise of a strike based on religious beliefs is not." Reaching the same conclusion, the Court in *United States v. Stafford*, 136 F.3d 1109, 1114 (7th Cir. 1998), reasoned:

> It is necessary to distinguish among religious affiliation, a religion's general tenets, and a specific religious belief. It would be improper and perhaps unconstitutional to strike a juror on the basis of his being a Catholic, a Jew, a Muslim, etc. It would be proper to strike him on the basis of a belief that would prevent him from basing his decision on the evidence and instructions, even if the belief had a religious backing; suppose for example that his religion taught that crimes should be left entirely to the justice of God. In between and most difficult to evaluate from the standpoint of *Batson* is a religious outlook that might make the prospective juror unusually reluctant, or unusually eager, to convict a criminal defendant.

In *Wheeler v. Commonwealth*, 121 S.W.3d 173 (Ky. 2003), our Supreme Court expressed the view in accord with the federal courts cited that there is an important distinction between a belief or attitude and religious affiliation. The issue before it was whether it was error "to inquire into the religious beliefs of prospective jurors during individual voir dire and to excuse them from service or allow peremptory challenges to be used against them because of their religious beliefs." *Id.* at 179. The Court concluded there was no violation of either the federal or state constitutions if prospective jurors were excused or struck because they "held any moral, religious or spiritual beliefs that would interfere with their service on the jury." *Id.*

Even if not required, the trial court engaged in a *Batson* analysis and properly concluded Haque was not struck based on her religious affiliation. Because we affirm the trial court's finding that the strike was based on Hague's belief or attitude rather than her religious affiliation, we need not reach the issue of whether a peremptory strike based solely on religious affiliation would be unconstitutional.

Based on the foregoing, the judgment of the Kenton Circuit Court is affirmed.

ALL CONCUR.