**STATE of Missouri, Respondent,**

v.

**William A. BRINKLEY, Appellant.**

No. 70249.

Supreme Court of Missouri,
En Banc.

July 26, 1988.

Sean D. O'Brien, Public Defender, Marco Roldan, Jo Ann Arnold, Asst. Public Defenders, Kansas City, for appellant.

William L. Webster, Atty. Gen., Jefferson City, Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

HIGGINS, Judge.

William A. Brinkley was convicted by a jury of second degree assault and armed criminal action. His punishment was fixed at imprisonment for 7 years on the assault count and 3 years on the armed criminal action count. Judgment was rendered accordingly with the sentences ordered to run concurrently. The Court of Appeals, Western District, awarded a new trial on a determination that the trial court erred in failing to quash the jury panel because of exclusion of black venirepersons from the trial jury. A dissenting judge certified the case to this Court for further consideration of the exclusion issue. The claim of discriminatory exclusion is denied and the case is retransferred to the court of appeals for consideration of the remaining points on appeal.

Appellant claims he was denied equal protection of the law under the 14th amendment of the United States Constitution. He alleges the State systematically excluded blacks from the jury in violation of the rule established in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed. 2d 69 (1986).

A defendant "may establish a prima facie case of discrimination by showing that 1) defendant is a member of a cognizable racial group, 2) that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire, and 3) that 'these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race.'" *State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987), *citing Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723.

The defendant is a black male. The State used four of its six peremptory challenges to strike four of the eight black members of the venire. Four black venirepersons were seated on the jury as finally selected. The State struck venirepersons Smith and Douglas because they had relatives serving prison sentences in the penitentiary at the time of trial. The State did not believe these venirepersons would be considerate of the State's case, and their exclusion is not questioned. The State struck venireman John Mitchell because he stated during voir dire that in general he believed he had the right to take the law into his own hands under certain circumstances. Venireman Floyd Jackson agreed with Mitchell's statement, so he was struck for the same reason. The State believed veniremen Mitchell and Jackson would not follow the law and would not be considerate of its case; appellant argues veniremen Mitchell and Jackson would have helped the State's case, therefore the only reason they were excused was because of their race.

Appellant stabbed his fiancee's 22–year–old mentally retarded brother, Robert Drew, during a domestic dispute concerning the care of appellant's two children by his fiancee and her mother. The victim was seriously injured by appellant when he tried to protect his sister from appellant's physical assault on her.

The voir dire concerning veniremen Mitchell and Jackson proceeded:

STATE: Would the fact that you were a victim of a crime affect your judgment in this case?

MITCHELL: My home was broken into 5 years ago.

STATE: Your home was broken into?

MITCHELL: Yes. I got the stuff myself. Neighbors told me who did it. I got it back myself.

STATE: Say that again. You say you caught them yourself?

MITCHELL: Yes. I went after them. Neighbors told me it was kids in the block. I knew where it was.

STATE: Okay.

MITCHELL: Since they were pretty young, I didn't bother to call the police.

STATE: Would it affect your judgment.

MITCHELL: No.

\*     \*     \*     \*     \*     \*

JACKSON: Burglary, Floyd Jackson, my car broken into.

STATE: Would that affect your judgment?

JACKSON: No. I wish I could have caught them like he did.

The prosecutor later continued on the subject of taking the law into your own hands:

STATE: That brings up an issue which Mr. Mitchell raises. There are some people who feel that you have the right, as a citizen, to take the law into your own hands. I'm not criticizing you for that, I'm just asking about your opinion and that is, if you feel, your rights have been violated in some way, that the proper channel is for you to take action rather than to rely upon the law. Now, is there anyone who agrees with that proposition that we should, in this community, act upon ourselves and take the law into our own hands rather than rely upon the authorities? Does anyone else have the same opinion as Mr. —

JACKSON: Yes.

When challenged by the defense concerning the reasons for striking veniremen Mitchell and Jackson the State testified that "in this case, where the defendant is charged with assaulting an individual as a result of a domestic dispute, where that person was trying to secure his children back, it's our opinion he would not be very sympathetic and follow the law." Jackson was struck on the same grounds because of his agreement with Mr. Mitchell's opinion.

The defense in rebuttal to the State's reasons for striking Mitchell and Jackson stated: "I think there is also a dispute that their taking the law into their own hands would in fact, help the State in this case, if the State is alleging that defendant Bill Brinkley, in this case was assaulting Kay Drew, one of the victims in the case, and it was from that Robert Drew, the ultimate victim to be stabbed—in other words, he took the law into his own hands attempting to help out, and it was that was injured. I think that statement on the converse, instead of taking away from the State's case, would help the State's case."

The trial court disagreed with defendant's position and overruled his motion to quash the jury panel. The trial court found defendant did not establish a prima facie case of discrimination under the *Batson* rule, and no further inquiries were made by the court.

A finding of discrimination, or a finding of no discrimination, is a finding of fact. *Antwine*, 743 S.W.2d at 66, *citing Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). "In a *Batson* context, the Supreme Court observed that because the trial

judge's findings 'largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.'" *Antwine*, 743 S.W.2d at 66, *citing Batson*, 476 U.S. 98–99, n. 21, 106 S.Ct. at 1724, n. 21. Findings of fact shall not be set aside unless clearly erroneous. *Antwine*, 743 S.W.2d at 66.

In this case defendant satisfied the first two parts, but not the third part, of the *Batson* test. Defendant failed to show that these facts, along with other relevant circumstances, raised an inference of racial discrimination. "[A] pattern of strikes against black jurors might, but does not necessarily, give rise to an inference of discrimination." *State v. Jones*, 747 S.W.2d 229, 231 (Mo.App.1988), *citing Batson*, 476 U.S. at 97–98, 106 S.Ct. at 1723. Defendant failed to meet his burden of proof under *Batson*.

Under the foregoing tests the State provides plausible, legitimate reasons for striking veniremen Mitchell and Jackson; the State could reasonably believe that these veniremen might not be sympathetic to its case and might not follow the law. The exercise of peremptory challenges is the product of the subjective analyses of a variety of character and personality traits perceived by counsel. *Batson* does not prohibit "hunch" challenges so long as racial animus is not the motive. *Antwine*, 743 S.W.2d at 67.

"[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* at 66, *citing Anderson*, 105 S.Ct. at 1511. If the trial court's action is plausible under review of the record in its entirety, an appellate court may not reverse it although had it been sitting as the trier of fact it would have weighed the evidence differently.

The record demonstrates legitimate, neutral explanations for the State's use of its peremptory challenges in a case where two black venirepersons were struck by the State without question by the defense, and four black venirepersons were seated on the trial jury. In this context the trial court's refusal to quash the jury panel did not violate the *Batson* rule.

Accordingly, the case is retransferred to the court of appeals for review of the remaining points of this appeal.

DONNELLY, WELLIVER, ROBERTSON and RENDLEN, JJ., and CRIST, Special Judge, concur.

BLACKMAR, J., concurs in separate opinion filed.

BILLINGS, C.J., not sitting.

BLACKMAR, Judge, concurring.

I concur.

The prosecutor's feeling that venireman Mitchell was an advocate of self help rather than of the processes of the law may seem far fetched. What he actually said was that when his home was broken into he found out from neighbors that some kids had done it, located the property, and did not call the police because they were "pretty young." He seems to have acted as a responsible citizen. But the significant circumstance is not the rationality of the prosecutor's fears, but rather whether the reason stated is a true reason as distinguished from a pretext. In some cases the irrationality of an assigned reason may support an inference of pretext. Here, however, there is ample support for the trial judge's conclusion. The record refutes any suggestion of an overriding purpose of excluding blacks. The prosecutor stated his construction of Mitchell's testimony in his next general question, and then excluded another juror who agreed with this characterization.

Evaluation of the jurors' responses, then, is a factual matter which is primarily for the trial judge. His conclusion should not be set aside.