COMMONWEALTH of Kentucky,
Appellant,

v.

Ronnie Lee COKER, Appellee.

No. 2005–SC–000981–DG.

Supreme Court of Kentucky.

Sept. 20, 2007.

Rehearing Denied Jan. 24, 2008.

having considered the applicable law, we conclude that the Court of Appeals did not show proper deference to the wide latitude afforded trial courts in ruling on *Batson* challenges. Thus, we reverse the decision of the Court of Appeals and reinstate Coker's conviction and sentence.

The sole issue before us involves the Commonwealth's exercise of a peremptory challenge during jury selection in Coker's trial on charges that he extorted, or attempted to extort, his former employer.

During voir dire, defense counsel asked the venire if they recalled some of the rights protected by the Bill of Rights. After other veniremembers had mentioned other rights, an African–American veniremember volunteered "due process." Defense counsel complimented this veniremember and made a few brief remarks about due process. Later in voir dire, defense counsel asked the venire what verdict it should return if it found that the Commonwealth had not proven each element of the charges against Coker beyond a reasonable doubt. The same African–American venireman who had been complimented for his knowledge of due process responded, "Not guilty."

The Commonwealth later struck the African–American veniremember, prompting defense counsel to lodge a *Batson* challenge. Defense counsel stated that during an earlier conversation involving the exercise of peremptory strikes, the Commonwealth had expressed surprise that there had been two African–Americans in the venire. Defense counsel pointed out to the trial court that the veniremember in question did not have any disqualifying problems and that the Commonwealth's Attorney had a history on this issue because he was involved in a case where a conviction

Gregory D. Stumbo, Attorney General of Kentucky, William Robert Long, Jr., Assistant Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellant.

Shannon Dupree, Assistant Public Advocate, Department of Public Advocacy, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

A circuit court jury convicted Ronnie Coker of theft by extortion and being a persistent felony offender in the second degree (PFO II). The trial court sentenced Coker to two years' imprisonment for the theft conviction, which was enhanced to seven years' imprisonment under the PFO II conviction.

A divided panel of the Court of Appeals reversed Coker's convictions on appeal because it found that the trial court erred when it denied Coker's *Batson*[1] challenges to an African–American veniremember against whom the Commonwealth had exercised one of its peremptory challenges. We granted discretionary review; and,

---

1. *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

was overturned on appeal under the auspices of *Batson*.

The Commonwealth responded by stating that it had struck the veniremember in question because he had volunteered information and spoke up regarding constitutional issues, including due process and presumption of innocence. So the Commonwealth believed that this potential juror was "aligning himself with the defendant." The Commonwealth also argued that it had exercised peremptory challenges on three other potential jurors who had volunteered answers to defense counsel's voir dire questions, none of whom were African–American.

The trial court ruled without elaboration that there had been no *Batson* violation. Defense counsel chose not to argue the matter further.

■ The Equal Protection Clause is violated when a potential juror is struck from a venire solely on the basis of race.[2] When a litigant believes that a potential juror has been impermissibly struck for racial reasons, the complaining litigant's objection is governed by the three-step process the United States Supreme Court set forth in *Batson*.[3] The *Batson* framework is designed to be efficient in order for jury selection to be as uninterrupted as possible.[4]

■ Step one required Coker to make a prima facie showing of purposeful racial discrimination by the Commonwealth in its strike of the African–American veniremember.[5] The Commonwealth was not required to respond to Coker's challenge unless the trial court found that Coker had satisfied his burden of making a prima facie showing. But whether Coker actually made a sufficient prima facie showing is moot since the Commonwealth responded to Coker's *Batson* objection.[6] So the parties proceeded to step two of the *Batson* framework.

■ Under step two, the burden shifted to the Commonwealth to demonstrate a racially neutral reason for exercising its peremptory challenge.[7] At this step, all that is required is that a prosecutor's articulated reason for exercising a peremptory challenge be race-neutral on its face.[8] As the United States Supreme Court has explained, "[t]he second step of this [*Batson* ] process does not demand an explanation that is persuasive, or even plausible." [9] There is nothing inherently

2. *Washington v. Commonwealth,* 34 S.W.3d 376, 378–79 (Ky.2000) ("Challenging prospective jurors on the basis of race violates the Equal Protection Clause.").

3. *Id.* at 379 ("In *Batson, supra,* the United States Supreme Court outlined a three-step process for evaluating such claims.").

4. *Hernandez v. New York,* 500 U.S. 352, 358, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) ("The analysis set forth in *Batson* permits prompt rulings on objections to peremptory challenges without substantial disruption of the jury selection process.") (plurality opinion).

5. *Washington,* 34 S.W.3d at 379; *see also Gray v. Commonwealth,* 203 S.W.3d 679, 690 (Ky.2006).

6. *Commonwealth v. Snodgrass,* 831 S.W.2d 176, 179 (Ky.1992) ("But since the prosecutor offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate issue of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing also becomes moot.").

7. *Gray,* 203 S.W.3d at 690.

8. *Hernandez,* 500 U.S. at 360, 111 S.Ct. 1859 ("At this step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.").

9. *Purkett v. Elem,* 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995).

racially-oriented about the Commonwealth's proffered reason—its belief that the veniremember's volunteered answers evidenced a bias in favor of the defendant. And the fact that the Commonwealth did not directly engage in a colloquy with the veniremember in question before striking him does not negate the facially race-neutral reason given by the Commonwealth for exercising its peremptory challenge. After all, the exercise of peremptory challenges is much more of an art than a science; and an attorney does not necessarily violate the Constitution by following the attorney's hunches when exercising peremptory challenges.[10] So the proceedings properly moved to step three.

▮▮▮ Step three of the *Batson* framework required the trial court to determine if Coker had met his burden of proving "purposeful discrimination."[11] In other words, having properly found that the Commonwealth's proffered reason was, on its face, race-neutral, the final step was for the trial court to determine if the Commonwealth's race-neutral reason was actually a pretext for racial discrimination.

Because the trial court's decision on this point requires it to assess the credibility and demeanor of the attorneys before it,[12] the trial court's ultimate decision on a *Batson* challenge is like a finding of fact that must be given great deference by an appellate court.[13]

Coker relies upon the fact that the Commonwealth allegedly expressed surprise that another African–American was in the venire in an effort to show that the Commonwealth was seeking to limit, or eliminate, the number of African–American jurors. But the Commonwealth's comment could just as easily be interpreted to mean that the Commonwealth was truly blind to the race of the veniremembers and, consequently, was unaware that there was another African–American in the venire.

Coker also relies upon the fact that the Commonwealth's Attorney was the prosecutor who was involved in a case in which this Court reversed a conviction due to a *Batson* violation.[14] We agree, of course, that the trial court was permitted to take the Commonwealth Attorney's earlier conduct into account in assessing his credibili-

---

10. *See, e.g., State v. Brinkley*, 753 S.W.2d 927, 930 (Mo.1988) ("The exercise of peremptory challenges is the product of the subjective analyses of a variety of character and personality traits perceived by counsel. *Batson* does not prohibit "hunch" challenges so long as racial animus is not the motive."); *J.E.B. v. Alabama ex rel. T.B.*, 511 U.S. 127, 148, 114 S.Ct. 1419, 1431, 128 L.Ed.2d 89 (1994) (O'Connor, J., concurring) ("Indeed, often a reason for it [the exercise of a peremptory challenge] cannot be stated, for a trial lawyer's judgments about a juror's sympathies are sometimes based on experienced hunches and educated guesses, derived from a juror's responses at voir dire or a juror's bare looks and gestures. That a trial lawyer's instinctive assessment of a juror's predisposition cannot meet the high standards of a challenge for cause does not mean that the lawyer's instinct is erroneous.") (internal citation and quotation marks omitted).

11. *Hernandez*, 500 U.S. at 359, 111 S.Ct. at 1866.

12. *See, e.g., id.*, 500 U.S. at 365, 111 S.Ct. at 1869 ("In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies peculiarly within a trial judge's province.") (internal quotation marks omitted).

13. *Washington*, 34 S.W.3d at 380 ("A trial court's ruling on a *Batson* challenge will not be disturbed unless clearly erroneous.").

14. *Washington*, 34 S.W.3d at 376.

ty. But we do not believe that the fact that an attorney was involved in a case in which a *Batson* violation was found to exist automatically means that the attorney cannot be believed in a later *Batson* hearing. As we stated previously, the evaluation of a prosecutor's state of mind is an area peculiarly within the province of the trial court judge.[15] So we reject any implication that the trial court erred by not finding the Commonwealth's Attorney to have violated *Batson* in this case merely because that same attorney had run afoul of *Batson* before.

Similarly, we disagree with Coker and the Court of Appeals that the United States Court of Appeals for the Sixth Circuit's opinion in *United States v. Hill* mandates reversal of Coker's conviction.[16] In *Hill,* the prosecutor was unable to offer any reason why he exercised a peremptory challenge on the only African–American veniremember. In the case at hand, the Commonwealth offered a facially race-neutral reason for exercising its peremptory challenge on an African–American veniremember. So *Hill* is readily distinguishable from the case at hand.

We reject any implication in *Hill* that an otherwise valid conviction must be reversed if a trial court fails to articulate its reasons for denying a *Batson* challenge. We believe that the fact that the trial court denied the *Batson* challenge inherently and obviously contains an implicit finding that it accepted the Commonwealth's reason for striking the African–American

veniremember as being sufficiently race-neutral and non-pretextual.

Because the *Batson* framework is intended to minimize delay in jury selection, we reject *Hill* and the Court of Appeals' seeming requirement that a trial court make detailed *Batson*-related findings under the facts of this case. This conclusion is reinforced by the fact that there is no indication that Coker asked the trial court for any further findings.[17]

In short, the trial court was faced with a situation where the Commonwealth's proffered reason for striking a potential juror was facially race-neutral; and the defense offered nothing to rebut the Commonwealth's facially race-neutral reason. The Commonwealth asserts that it also struck three white veniremembers who volunteered answers to defense counsel's voir dire questions. Coker responds that the appellate record does not disclose the race of the other potential jurors the Commonwealth struck. And the videotape of the trial proceedings does not show the faces of the venire, meaning that we are unable to see which prospective jurors answered defense counsel's voir dire questions. But the fact that the record before us does not disclose all of the sensory information available to the trial court only underscores the trial court's unique position to evaluate completely all of the circumstances of a case before ruling on a *Batson* challenge. Also, it should be noted that Coker bore the burden to prove discrimination at all times.[18]

**15.** *Snodgrass,* 831 S.W.2d at 179, *quoting Hernandez,* 500 U.S. at 365, 111 S.Ct. 1859.

**16.** 146 F.3d 337 (6th Cir.1998).

**17.** *Cf.* Kentucky Rules of Civil Procedure (CR) 52.04 (providing that a judgment may not be reversed due to a trial court's failure to make essential findings unless the lack of findings is brought to the trial court's attention); Ken-

tucky Rules of Criminal Procedure (RCr) 13.04 (providing that the Rules of Civil Procedure are applicable to criminal cases, unless the Civil Rule is inconsistent with the Rules of Criminal Procedure).

**18.** *See Purkett,* 514 U.S. at 768, 115 S.Ct. 1769 ("the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.").

Reasonable minds could differ as to whether the Commonwealth's stated reason for striking the potential juror in question was a pretext for racial discrimination. The veniremember spoke only four words during voir dire. But our job is not to determine whether we find a proffered reason to be a mere pretext for discrimination; our job is to determine whether the trial court's acceptance of the validity of the race-neutral reason is clearly erroneous. Under the facts of the case at hand, we do not agree with the Court of Appeals' conclusion that the trial court's decision on this point was clearly erroneous.

Accordingly, for the foregoing reasons, the decision of the Court of Appeals is hereby reversed; and Ronnie Coker's conviction and sentence are hereby reinstated as imposed by the Franklin Circuit Court.

LAMBERT, C.J.; CUNNINGHAM, NOBLE, SCHRODER, and SCOTT, JJ., concur.

LAMBERT, C.J., also concurs by separate opinion in which NOBLE, J., joins.

ABRAMSON, J., not sitting.

Concurring Opinion by Chief Justice LAMBERT.

While I have concurred with the majority, I harbor reservations about this case because the record fails to reveal the trial court's view of the "race-neutral reason" offered by the prosecutor. When a party has used a peremptory strike to excuse an African–American juror, it takes little or no imagination to formulate a facially race-neutral reason in response to a *Batson* challenge. It is for the trial court to determine whether the reason given is pretextual or legitimate. Appellate courts cannot discharge their duty of review without knowing what the trial court thought of the controversy.

I have no desire to impose greater burdens on trial courts, but with the ease of evasion inherent in the *Batson* rule, trial court vigilance is necessary, and appellate courts need at least a few words from the trial court as to its reason for sustaining or overruling the objection.

NOBLE, J., joins this concurring opinion.