RENDERED: APRIL 30, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2019-CA-0538-MR

DARRYL KEITH BAKER                                         APPELLANT

APPEAL FROM FAYETTE CIRCUIT COURT
v.        HONORABLE LUCY A. VANMETER, JUDGE
ACTION NO. 18-CR-00637

COMMONWEALTH OF KENTUCKY                                   APPELLEE

OPINION
REVERSING AND REMANDING

** ** ** ** **

BEFORE: COMBS, JONES, AND MCNEILL, JUDGES.

JONES, JUDGE: Darryl Keith Baker appeals from the Fayette Circuit Court's

final judgment and sentence of imprisonment entered on March 13, 2019. At his

jury trial, aside from a number of misdemeanor convictions, Baker was also

convicted of third-degree assault. He was sentenced to two-years' imprisonment

on that charge, which was enhanced to fifteen years by being a first-degree

persistent felony offender (PFO). After careful consideration, we reverse and remand for a new trial based on the trial court's erroneous application of *Batson v. Kentucky*, 476 U.S. 79, 106 S. Ct. 1712, 90 L. Ed. 2d 69 (1986) and its progeny.

## I. Background

During the late evening hours of March 27, 2018, police officers were investigating an automobile parked outside the Day's Motel on Versailles Road in Lexington. Police officers later described the Day's Motel as being in a "high call volume" area. Baker, a homeless black man, occupied the front passenger seat of the vehicle. While the officers were questioning Baker, they repeatedly directed him to keep his hands in view, because Baker kept placing his hands inside his jacket. The officers asked Baker for permission to search the vehicle. Baker declined, stating the vehicle did not belong to him and he only had the owner's permission to stay there.

After declining to give permission to search, Baker once again hid his hands, this time dropping them below the seat. To ensure Baker was not reaching for a weapon, an officer opened the door of the vehicle. When the door opened, Baker became aggressive, jumping out of the vehicle with his fists clenched and growling at the officers. At this point, the officers intended to arrest Baker for

-2-

menacing[1] and ordered him to get on the ground. When Baker did not comply, Officer David Smith of the Lexington Police Department tried to restrain Baker by grasping his right arm in order to handcuff him. Baker responded by punching Officer Smith several times, causing injuries to the officer's chin, left eye, and finger. After subduing Baker, the officers searched the vehicle and found a narcotics pipe and a used syringe.

Following Baker's arrest, the Fayette County grand jury indicted him on multiple charges stemming from the incident: third-degree assault,[2] resisting arrest,[3] possession of drug paraphernalia,[4] and menacing.[5] The grand jury later added a charge of being a first-degree persistent felony offender (PFO)[6] to Baker's indictment. The Fayette Circuit Court held Baker's jury trial on November 13, 2018.[7] The Commonwealth presented testimony from several Lexington police

---

[1] "Menacing" is defined in Kentucky Revised Statute (KRS) 508.050 as "intentionally plac[ing] another person in reasonable apprehension of imminent physical injury."

[2] KRS 508.025(1)(a), a Class D felony.

[3] KRS 520.090, a Class A misdemeanor.

[4] KRS 218A.500(2), a Class A misdemeanor.

[5] KRS 508.050, a Class B misdemeanor.

[6] KRS 532.080.

[7] These proceedings in Fayette Circuit Court involved three separate judges. Judge John Reynolds conducted the guilt phase of Baker's trial, but he left during jury deliberation in order to attend to other matters. Judge Kimberly Bunnell presided when the jury returned its verdict.

officers, including Officer Smith, conforming to the above narrative. The Commonwealth also introduced body camera video footage of the incident. Baker did not present witnesses or other evidence in his defense.

After deliberation, the jury found Baker guilty on all counts in the indictment and recommended a sentence of two years on the third-degree assault charge, enhanced to fifteen years by virtue of the PFO. For the remaining misdemeanor charges, the jury recommended a sentence of thirty-days' incarceration on each count. The trial court entered its final judgment on March 13, 2019, sentencing Baker in accordance with the jury's recommendation. This appeal followed.

## II. Analysis

Baker presents three arguments on appeal. First, he argues the trial court erroneously denied his motion to prohibit the Commonwealth from striking jurors in violation of *Batson v. Kentucky*. Second, Baker argues the trial court erroneously denied his right to present mitigating evidence in the penalty phase. Third, Baker argues the trial court erroneously permitted the Commonwealth to refer to the site of the incident where he was arrested as "a high crime area," in violation of the parties' agreed motion *in limine* to refrain from such language. We agree with Baker's first argument regarding *Batson* and note that such an error is

Finally, Judge Lucy A. VanMeter entered the final judgment upon her successful election to the seat formerly occupied by Judge Reynolds.

structural, requiring a new trial. For these reasons, we need not consider his other arguments at this time.

Baker argues the trial court erroneously denied his *Batson* challenge to the prosecutor's use of two peremptory strikes. At a bench conference during *voir dire*, Baker objected to the prosecutor's use of peremptory strikes against Juror 4696 and Juror 4079, both of whom were black men. By way of explanation, the prosecutor argued that Juror 4696 had disclosed that his father was charged with murder in Fayette County in 1986, when the juror was thirteen years old. Despite the juror's assertion he would be impartial during Baker's trial, the prosecutor argued she was uncertain what the juror's experience was with the court system. Notably, the prosecutor elected *not* to strike Juror 4718, a white woman, who disclosed that she had a brother who was prosecuted for fraud in federal court. Like the immediately preceding Juror 4696, Juror 4718 stated her family member was treated fairly and it would not affect her ability to sit as a juror. Next, regarding Juror 4079, the prosecutor stated the following reason for the strike:

> I don't know if you caught this, but whenever his name was called, he stood up, shook his head, and was very disgruntled about it, and kind of gave off bad body language while we were asking questions—I don't know if you caught it or not. He stood up really quick and sat down . . . . It was pretty quick.

Baker's counsel maintained his objection to the strikes, asserting these were insufficiently race-neutral reasons and did not comport with *Batson*. Without

providing analysis or commentary, the trial court simply stated, "well, [the prosecutor] stated her reasons. You preserved that for appeal."

*Batson v. Kentucky* forbids the use of peremptory strikes against a potential juror based on race because doing so results in a violation of equal protection principles in the federal constitution. "Exclusion of black citizens from service as jurors constitutes a primary example of the evil the Fourteenth Amendment was designed to cure." *Batson*, 476 U.S. at 85, 106 S. Ct. at 1716. A prosecutor may use a peremptory strike against a potential juror who happens to belong to a racial minority group, but the prosecutor must have a race-neutral reason for doing so. *Id.*, 476 U.S. at 98, 106 S. Ct. at 1724. "[T]he Constitution forbids striking even a single prospective juror for a discriminatory purpose[.]" *Snyder v. Louisiana*, 552 U.S. 472, 478, 128 S. Ct. 1203, 1208, 170 L. Ed. 2d 175 (2008) (quoting *United States v. Vasquez-Lopez*, 22 F.3d 900, 902 (9th Cir. 1994)).

When a defendant alleges the prosecutor has struck a *venire* person based on race, the trial court must engage in a three-part test under *Batson* to evaluate the claim:

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination.

*United States v. Atkins*, 843 F.3d 625, 631 (6th Cir. 2016) (citations and internal quotation marks omitted); *Mash v. Commonwealth*, 376 S.W.3d 548, 555 (Ky. 2012). "[A] *Batson* violation is structural error not subject to harmless error review." *Johnson v. Commonwealth*, 450 S.W.3d 696, 706 (Ky. 2014), *abrogated on other grounds by Roe v. Commonwealth*, 493 S.W.3d 814 (Ky. 2015). However, "[b]ecause the trial court is the best 'judge' of the Commonwealth's motives in exercising its peremptory strikes, great deference is given to the court's ruling." *Tunstull v. Commonwealth*, 337 S.W.3d 576, 585 (Ky. 2011) (quoting *Gray v. Commonwealth*, 203 S.W.3d 679, 691 (Ky. 2006)). "On appellate review, a trial court's denial of a *Batson* challenge will not be reversed unless clearly erroneous." *Id.* (citations omitted).

In examining the issue through the three-part test outlined above, we have ascertained there is no need to analyze the first prong, that of prima facie discrimination, because the prosecutor volunteered an explanation for the peremptory strike. When "the prosecutor offered a race-neutral explanation for the peremptory challenge and the trial court has ruled on the ultimate issue of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing . . . becomes moot." *Commonwealth v. Snodgrass*, 831 S.W.2d 176, 179 (Ky. 1992).

For the second prong of the test, "[t]he issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." *Mash*, 376 S.W.3d at 555 (quoting *Hernandez v. New York*, 500 U.S. 352, 360, 111 S. Ct. 1859, 1866, 114 L. Ed. 2d 395 (1991)). "This step sets a fairly low bar for the Commonwealth to meet." *Id*. Here, the prosecutor offered two separate explanations for striking the jurors. First, regarding Juror 4696, the prosecutor averred that the juror's father was previously charged with murder, and the juror may have retained some ill will against the court system. Next, regarding Juror 4079, the prosecutor allegedly viewed a momentary disgruntlement when the juror heard his name called. Both of the prosecutor's asserted explanations are facially race-neutral, in that they "could apply with equal force to a juror of any race." *Id*. Therefore, the second prong of *Batson* was met.

Finally, the third prong of the test required the trial court "to determine whether the prosecutor's race-neutral reason was actually a pretext for racial discrimination." *Id*. at 556. On this point, we rely heavily on the trial court:

> Because the trial court's decision on this point requires it to assess the credibility and demeanor of the attorneys before it, the trial court's ultimate decision on a *Batson* challenge is like a finding of fact that must be given great deference by an appellate court. In the absence of exceptional circumstances, appellate courts should defer to the trial court at this step of the *Batson* analysis.

-8-

*Id.* (citations and internal quotation marks omitted).  This final step of *Batson* requires the trial court to engage in an independent assessment of the prosecutor's reasoning and credibility.  "[A] judge cannot merely accept the reasons proffered at face value, but must evaluate those reasons as he or she would weigh any disputed fact."  *Abukar v. Commonwealth*, 530 S.W.3d 915, 918 (Ky. App. 2017) (quoting *Washington v. Commonwealth*, 34 S.W.3d 376, 379 (Ky. 2000)).

Unfortunately, the trial court in the case *sub judice* utterly failed to conduct any kind of independent assessment of the prosecutor's reasoning.  Step three of *Batson* requires the trial court to "assess the plausibility of the prosecutor's explanations in light of all relevant evidence and determine whether the proffered reasons are legitimate or simply pretextual for discrimination against the targeted class."  *McPherson v. Commonwealth*, 171 S.W.3d 1, 3 (Ky. 2005) (citation omitted).  Instead, the record reflects how the trial court either omitted step three or conflated it with step two:  "Well, [the prosecutor] stated her reasons.  You preserved that for appeal."  This is gravely insufficient.  "A [trial] court must independently assess a race-neutral explanation and explicitly rule on its credibility . . . .  It is inappropriate for a [trial] court to perfunctorily accept a race-neutral explanation without engaging in further investigation."  *United States v. Cleveland*, 907 F.3d 423, 434 (6th Cir. 2018) (citations omitted).  Furthermore, it is error to combine the second and third prongs of the *Batson* inquiry.  *Thomas v.*

*Commonwealth*, 153 S.W.3d 772, 777 (Ky. 2004) (citing *Purkett v. Elem*, 514 U.S. 765, 115 S. Ct. 1769, 131 L. Ed. 2d 834 (1995)); *see also United States v. Kimbrel*, 532 F.3d 461 (6th Cir. 2008).

The dissent focuses on our Supreme Court's holding in *Commonwealth v. Coker*, 241 S.W.3d 305 (Ky. 2007), arguing the result in that case should control here. After a close examination, we believe *Coker* is narrowly distinguishable. In *Coker*, the trial court made a very terse ruling which the Kentucky Supreme Court held comported with step three of *Batson*: "The trial court ruled without elaboration that there had been no *Batson* violation." *Id*. at 307. Here, the trial court made no ruling at all—in spite of the fact that "trial judges possess the primary responsibility to enforce *Batson* and prevent racial discrimination from seeping into the jury selection process." *Flowers v. Mississippi*, 139 S. Ct. 2228, 2243, 204 L. Ed. 2d 638 (2019).

*Coker*'s concurrence is particularly compelling as to why a trial court should explicitly rule on a *Batson* challenge. Chief Justice Lambert, joined by Justice Noble, noted the "ease of evasion" inherent in the *Batson* rule, and warned that "[a]ppellate courts cannot discharge their duty of review without knowing what the trial court thought of the controversy." *Id*. at 310 (Lambert, CJ, concurring). We defer to a trial court's *Batson* ruling, but, as the Sixth Circuit stated in another context, "[d]eferential review is not no review[.]" *McDonald v.*

*Western-Southern Life Ins. Co.*, 347 F.3d 161, 172 (6th Cir. 2003) (citation and internal quotation marks omitted). In short, the trial court's failure to issue a ruling hindered meaningful appellate review.

Moreover, in *Snyder v. Louisiana*, a case decided after *Coker*, the United States Supreme Court considered the issue of a trial court which failed to issue a *Batson* ruling. The Supreme Court determined that demeanor could form the basis for a peremptory strike; however, in *Snyder*, "the record does not show that the trial judge actually made a determination concerning [the potential juror's] demeanor. . . . Rather than making a specific finding on the record concerning [the potential juror's] demeanor, the trial judge simply allowed the challenge without explanation." *Snyder*, 552 U.S. at 479, 128 S. Ct. at 1209. In the absence of a ruling by the trial court, the Supreme Court declined to presume that the trial court agreed with the prosecutor's assertions. *Id.* We conclude there is a significant difference in the trial court's providing a step-three ruling without an explanation, as in *Coker*, and a failure to make any ruling at all, as in *Snyder* and the case *sub judice*.

Finally, even if we were to assume the trial court explicitly ruled on the prosecutor's peremptory strike of Juror 4079, the trial court's acceptance of the demeanor-based rationale would be an abuse of discretion requiring reversal under *Batson*. In coming to this conclusion, we are mindful of the Kentucky Supreme

-11-

Court's relatively recent memorandum opinion of *Sifuentes v. Commonwealth*, No. 2016-SC-000485-MR, 2018 WL 898228 (Ky. Feb. 15, 2018).[8]  In *Sifuentes*, the prosecutor used a peremptory strike against a juror who directed "belligerent" and "hostile" looks at the Commonwealth's counsel table.  *Id*. at \*3.  The Supreme Court acknowledged the facial neutrality of this reason under step two of *Batson*. *Id*.  Nonetheless, despite the trial court's acceptance of the prosecutor's reasoning, the Supreme Court held the explanation for the peremptory strike was insufficient under *Batson*.

In its decision to reverse for the *Batson* violation, the *Sifuentes* court held, "we have consistently found *Batson* violations when only the appearance or demeanor of a perspective juror is the given reason."  *Id*. at \*4 (citing *Johnson*, 450 S.W.3d at 703-06, *abrogated on other grounds by Roe*, 493 S.W.3d 814; *Washington*, 34 S.W.3d at 379).  The *Sifuentes* court held the prosecutor "did not offer any explanation as to why [the prospective juror's] perceived hostility would make him unfit to serve as a juror" and pointed out that "when proffered reasons are so vague, the 'vagueness alone could fairly point toward a conclusion that they are merely pretextual.'"  *Id*. (quoting *Johnson*, 450 S.W.3d at 704, *abrogated on other grounds by Roe*, 493 S.W.3d 814).

---

[8]  *Sifuentes* is an unpublished opinion which we cite not as authority but for its persuasive value under Kentucky Rule of Civil Procedure (CR) 76.28(4)(c).

In the case before us, the demeanor-based rationale is even weaker than that found to be insufficient in *Sifuentes*. The prosecutor claimed Juror 4079 had "bad body language" and seemed "disgruntled," which falls short of the outright belligerent and hostile looks directed toward the prosecutor in *Sifuentes*. Furthermore, the prosecutor in this case admitted to the trial court during the bench conference that the look was so fleeting that **the judge probably did not see it**: "I don't know if you caught it or not. He stood up really quick and sat down . . . . It was pretty quick." Even though *Sifuentes* is not binding authority, its rationale persuades us that a similar result is justified in this case. Even if the trial court had explicitly accepted the prosecutor's demeanor-based peremptory strike against Juror 4079, which we have previously noted did not occur, doing so would have amounted to an abuse of discretion requiring reversal.

Because the trial court failed to undertake an inquiry consistent with *Batson*'s framework, and *Batson* violations are "structural error[s] not subject to harmless error review[,]" *Johnson*, 450 S.W.3d at 706, *abrogated on other grounds by Roe*, 493 S.W.3d 814, we are required to reverse Baker's judgment of conviction and remand for a new trial.

## III. Conclusion

For the foregoing reasons, we reverse the judgment of conviction and remand this matter for a new trial conducted in a manner not inconsistent with this opinion.

COMBS, JUDGE, CONCURS.

MCNEILL, JUDGE, DISSENTS AND FILES SEPARATE OPINION.

MCNEILL, JUDGE, DISSENTING:  I respectfully dissent because I do not believe *Batson*[9] requires a trial court to make detailed findings or explain its reasoning when evaluating a proffered reason for a peremptory strike.  The majority opinion holds the trial court "failed to undertake an inquiry consistent with *Batson*'s framework," when it "utterly failed to conduct any kind of independent assessment" of the prosecutor's proffered reasons for its peremptory strikes.  It reaches this conclusion because the trial court "without providing analysis or commentary" denied the *Batson* challenge by stating "well, [the prosecutor] stated her reasons.  You preserved that for appeal."

The majority cites *United States v. Cleveland*, 907 F.3d 423 (6th Cir. 2018), for the requirement that a trial court must "independently assess a race-

---

[9] *Batson v. Kentucky*, 476 U.S. 79, 80, 106 S. Ct. 1712, 1714, 90 L. Ed. 2d 69 (1986), *holding modified by Powers v. Ohio*, 499 U.S. 400, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

-14-

neutral explanation and *explicitly* rule on its credibility . . . ." *Id.* at 434 (emphasis added). But decisions of lower federal courts are not binding on state courts. *Commonwealth Nat. Res. & Env't Prot. Cabinet v. Kentec Coal Co.*, 177 S.W.3d 718, 725 (Ky. 2005); *Cook v. Popplewell*, 394 S.W.3d 323, 346 (Ky. 2011) (Abramson, J., concurring) ("We, of course, look to the Sixth Circuit with a great deal of respect, but as the Court of Appeals noted, we are not bound by Sixth Circuit precedent.").

Further, the issue of whether a trial court must make explicit findings as to the credibility of a prosecutor's race-neutral reason for its peremptory strike appears unsettled in the federal courts of appeals, including the Sixth Circuit. *See Mitchell v. LaRose*, 802 F. App'x 957, 961 (6th Cir. 2020)[10] ("[A] clear rejection of a *Batson* motion without explicit findings violates no clearly established federal law."); *compare Barnes v. Anderson,* 202 F.3d 150, 156-57 (2d Cir. 1999) (holding it was error for the trial court to deny a *Batson* motion without explicitly adjudicating the credibility of the non-moving party's race neutral explanations for its peremptory strikes) *with McKinney v. Artuz*, 326 F.3d 87, 100 (2d Cir. 2003) ("Although reviewing courts might have preferred the trial court to provide express reasons for each credibility determination, no clearly established federal law required the trial court to do so.").

---

[10] Pursuant to Federal Rule of Appellate Procedure 32.1, unpublished federal opinions are entitled to the same persuasive import as published federal opinions.

-15-

As noted in *Mitchell*:

"The Supreme Court has never directed trial courts to make detailed findings . . . before ruling on a *Batson* motion."  *Caudill v. Conover*, 881 F.3d 454, 459 (6th Cir. 2018), *cert. denied*, ⸺ U.S. ⸺, 139 S. Ct. 793, 202 L.Ed.2d 586 (2019); *see Miller-El v. Cockrell*, 537 U.S. 322, 347, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003) ("[A] state court need not make detailed findings" to render a proper *Batson* ruling).  Nor has the Supreme Court generally required trial courts to make credibility findings about a party's proffered race-neutral reason beyond a clear acceptance or rejection of the motion.  Indeed, *Batson* itself "decline[d] . . . to formulate particular procedures to be followed" beyond the three-step framework.  476 U.S. at 99, 106 S.Ct. 1712.

*Mitchell*, 802 F. App'x at 960.

We are, however, bound by Kentucky Supreme Court precedent, *see Smith v. Vilvarajah*, 57 S.W.3d 839, 841 (Ky. App. 2000) (citing SCR[11] 1.030(8)(a)) ("as an intermediate appellate court, this Court is bound by established precedents of the Kentucky Supreme Court."), and its holding in *Commonwealth v. Coker*, 241 S.W.3d 305 (Ky. 2007), appears controlling.  In that case, a panel of this Court reversed a trial court's denial of a defendant's *Batson* challenge.  On discretionary review, our Supreme Court reversed, concluding that "the Court of Appeals did not show proper deference to the wide latitude afforded trial courts in ruling on *Batson* challenges."  *Id.* at 306.

---

[11] Kentucky Supreme Court Rules.

-16-

There, as here, the trial court had denied the *Batson* challenge "without elaboration." *Id.* at 307. Both defendant and Court of Appeals cited *United States v. Hill*, 146 F.3d 337 (6th Cir. 1998), which reversed a trial court's *Batson* ruling, holding it could not conduct a proper review because the trial court had not explained its reasoning for its rulings in step three of the Batson analysis. Our Supreme Court held:

> We reject any implication in *Hill* that an otherwise valid conviction must be reversed if a trial court fails to articulate its reasons for denying a *Batson* challenge. We believe that the fact that the trial court denied the *Batson* challenge inherently and obviously contains an implicit finding that it accepted the Commonwealth's reason for striking the African-American veniremember as being sufficiently race-neutral and non-pretextual.
>
> Because the *Batson* framework is intended to minimize delay in jury selection, we reject *Hill* and the Court of Appeals' seeming requirement that a trial court make detailed *Batson*-related findings under the facts of this case. This conclusion is reinforced by the fact that there is no indication that Coker asked the trial court for any further findings.

*Coker*, 241 S.W.3d at 309.

Pursuant to *Coker*, therefore, a trial court is not required to make explicit findings or explain its reasoning in denying a *Batson* challenge. The trial court's denial of Baker's *Batson* challenge "inherently and obviously contains an implicit finding that it accepted the Commonwealth's reason for striking the African-American veniremember as being sufficiently race-neutral and non-

-17-

pretextual." *Coker*, 241 S.W.3d at 309. Further, as in *Coker*, Baker did not request more detailed findings from the trial court.

As an additional reason to affirm the trial court, I would find that Baker's failure to rebut the Commonwealth's facially race-neutral reasons for its peremptory strikes by offering evidence of purposeful discrimination is fatal to his *Batson* claims. "[T]he ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett v. Elem*, 514 U.S. 765, 768, 115 S. Ct. 1769, 1771, 131 L. Ed. 2d 834 (1995) (citation omitted). "Once the Commonwealth gave its reasoning and such was acceptable to the trial court, the burden shifted to the Appellant to rebut the neutrality of the reasoning." *Gray v. Commonwealth*, 203 S.W.3d 679, 690 (Ky. 2006); *see also Mash v. Commonwealth*, 376 S.W.3d 548, 555 (Ky. 2012) (citation omitted) ("At the third step of *Batson,* the burden shifts back to the defendant to show 'purposeful discrimination.'").

Because Baker offered no evidence of purposeful discrimination "there was nothing on the record from which the trial court could have found that the Commonwealth's proffered reasons were a mere pretext for racial discrimination." *Chatman v. Commonwealth*, 241 S.W.3d 799, 804 (Ky. 2007). I am, thus, "not persuaded that the Appellant met his subsequent burden to provide further evidence on which the trial court could determine the Commonwealth's

-18-

peremptory strike to be discriminatory." *Gray*, 203 S.W.3d at 691 (citation

omitted).

Therefore, I would affirm the judgment of conviction.


BRIEFS FOR APPELLANT:

Emily Holt Rhorer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Jenny L. Sanders
Assistant Attorney General
Frankfort, Kentucky